The complaint stated that on 29 March, 1888, plaintiff and Houston, defendant's agent, entered into a contract, the material parts of which are as follows:
"It is hereby contracted and agreed between John Paalzow, of (438) Hickory, Catawba County, North Carolina, on the first part, vendor, and Maj. J. F. Houston, manager North Carolina Estate Company (Limited), of Morganton, Burke County, North Carolina, on the second part, purchaser, with regard to the walnut timber on the estate of Mr. J. E. Wilfong, of Rock House, in the county of Catawba, North Carolina, as follows:
"First — That said John Paalzow, of the first part, sells to the said Maj. J. F. Houston, of the second part, one hundred and twenty-five walnut (black) trees on the property, as aforesaid, for the sum of twenty-five hundred dollars ($2,500) — that is to say, all the black walnut trees situated and growing in what is known as the `Canebrake Bottom' and on timbered lands of said J. E. Wilfong, at Rock House, as aforementioned, always excepting such walnut trees as measure, at a height of two feet from the ground, a circumference round the bark of less than twenty-four inches; and that is the basis of this contract.
"Second — That, on the understanding that $2,500, as aforementioned, represents the value of the one hundred and twenty-five walnut trees, as aforesaid — that is to say, the trees of black walnut timber, as described in Mrs. John Paalzow's proposal, dated Hickory, 25 March, 1888, as situated on the lands of J. E. Wilfong — a deduction in dollars, calculated on this basis, be made in proportion from the last payment hereafter set forth for each and every tree falling short of said number of one hundred and twenty-five black walnut trees aforementioned. *Page 322 
 "Third — That the payment of said $2,500 be in four installments —
"First payment of $666.60 to be made to said vendor, John Paalzow, by purchaser, Maj. J. F. Houston, on the legal title to said walnut timber being made to the said purchaser.
(439) "Second payment of $1,000 2d be made thirty days after payment of the first payment.
"Third payment of $416.60 3d to be made in thirty days after payment of second payment.
"Fourth payment of $416.60 to be made similarly, or ninety days after first payment.
"Fourth — That said John Paalzow hereby secures to J. F. Houston the right of way over the Rock House property to haul the trees, without injury to the property or crops," etc.
The first installment was to be paid "on the legal title being made to the said purchaser." Houston, on his part, agreed to move the trees in twelve months.
The complaint also stated that the defendant paid $2,500 for 125 trees, and that defendant went upon the land and cut and sold and took possession of 60 other trees not mentioned in the contract.
The plaintiff demands damages for trespass and for unlawfully converting said sixty trees, in excess of the number sold him, to his own use.
To this complaint the defendant filed the following demurrer:
1. That it appears upon the face of the complaint, by reference to the contract set forth in paragraph 3 thereof, entered into between plaintiff and defendant's agent on 29 March, 1888, that the defendant purchased of plaintiff all the black walnut trees situated and growing in what is known as the "Canebrake Bottom" and timbered land of J. E. Wilfong, at Rock House, Catawba County, excepting such walnut trees as measure, at the height of two feet from the ground, a circumference around the bark of less than twenty-four inches, at the agreed price of $2,500; but it also appears in said complaint that said purchase money has been paid, and that the amount sued for is in excess of said sum contracted and agreed to be paid and which was paid, and it is not alleged (440) that any of the walnut trees used by defendant, under and by virtue of said contract, were smaller than or other than the ones sold defendant, or that any of said walnut trees so cut and used by defendant measured, at a height of two feet from the ground, a circumference around the bark of less than twenty-four inches.
2. That it is not charged in said complaint that defendant accepted, used or cut any walnut timber in excess of the number of 125 trees; and it is alleged that said walnut trees, in excess of said number, amounting to sixty trees, were not used by defendant, but were wrongfully and tortiously attached by the sheriff of Catawba County and his deputies *Page 323 
to satisfy creditors of defendant, but it is not alleged that defendant procured said attachment to issue or said levies to be made, and no liability is upon this defendant by reason of the same.
3. That it is not alleged or shown that the legal title to said walnut timber has been handed to defendant, and the same is a precedent condition to any liability by defendant.
The court overruled the demurrer, and the defendant appealed.
The contract is not very carefully drawn, but, upon consideration of the whole contract, we are of opinion that the agreement was for the sale of 125 trees, of dimensions named, at the price of $2,500. While it is clear that it was the opinion of the parties that such number would embrace "all the black walnut trees" of that dimension growing on the land, yet those words are not to be construed by themselves. Being general words, they are limited by the evident agreement of the parties that the number of the trees sold did not exceed 125. The (441) second paragraph of the contract recites that, "on the understanding that $2,500 represents the value of the 125 black walnut trees aforesaid," etc. The contract further provides for an abatement at that rate ($20 per tree), should the number of trees fall under the stipulated 125. Twice in the same contract reference is made to the fact that the contract is "on the basis of 125 trees," of the dimensions named. There is no provision, it is true, for the payment for trees in excess of that number. It was open to the defendant whenever he got his 125 trees to stop; and if he chose not to do so, but to cut more trees than he had bought, he is liable for their fair value.
The complaint alleges that the defendant "unlawfully converted said sixty trees, in excess of the number sold him, to his own use, and by said unlawful and willful removal" and trespass, etc., plaintiff has been damaged. We see no force, therefore, in the second ground of demurrer.
As to the third ground of the demurrer, this is not an action for the value of the 125 trees sold and for which plaintiff contracted to convey the legal title, but for the alleged unlawful conversion of sixty trees in excess of the contract number.
The court below rightly overruled the demurrer, and defendant has leave to set up his defense to the merits by answer.
No error.
Cited: Womack v. Carter, 160 N.C. 290. *Page 324 
(442)